UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN HICKS #451912,

    Plaintiff,                                        Hon. Robert J. Jonker

v.                                                  Case No. 1:21-cv-1021

KERRY KNIGHT,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jonathan Hicks, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), has sued Defendant Kerry Knight, a Corrections Officer (CO) employed by the MDOC, alleging that Knight's use of a taser, or Electronic Control Device (ECD), on Hicks violated his rights under the Eighth Amendment. Hicks brings his claim pursuant to 42 U.S.C. § 1983. The matter is now before me on Knight's Motion for Summary Judgment. (ECF No. 37.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion.

### I.  Background

The incident giving rise to this action occurred on September 14, 2019, at the Earnest C. Brooks Correctional Facility (LRF), where Hicks was incarcerated at the time.

**A.  Hicks's Version**

Hicks alleges that while on D-Wing at LRF, he was attacked from behind by another prisoner who used a homemade knife to stab Hicks repeatedly in his head, neck, spine, back, shoulder, and chest. (ECF No. 1 at PageID.2.) When the incident occurred, Knight was conducting a routine round on D-Wing, near Hicks and the other prisoner. When Knight noticed the fight, he ordered the attacker to "drop the shank." Hicks began to move toward Knight to escape from the

attacker, but the attacker pursued him. Knight's only attempt to intervene to stop the fight was to yell "drop the shank" several more times, however, the other prisoner ignored the orders. (*Id.* at PageID.2–3.) Hicks tried to fend off the attacker. An unknown officer who arrived on the scene deployed pepper spray against Hicks and the other prisoner while the other prisoner continued to stab Hicks. (*Id.* at PageID.3–4.) As Hicks was fighting back, Knight shot him in the back with his ECD. Hicks alleges that Knight never warned him that he was going to deploy his ECD and never ordered Hicks to stop defending himself. (*Id.* at PageID.3.) After Hicks was shot and sprayed, he lost consciousness. When he woke up, he was on his stomach facedown with Knight holding him down. Hicks heard Knight yell, "grab the other guy, he has the shank," after which Knight told Hicks not to move. Hicks was then handcuffed and taken to healthcare. (*Id.* at PageID.4.)

**B.    Knight's Version**

Knight states that as he was doing his rounds on D-Wing, he heard someone behind him yell, "Heh!" As he spun around to see what was happening, he saw another prisoner fighting with Hicks. (ECF No. 38-2 at PageID.118–19.) He saw the other prisoner striking Hicks in the head and back and quickly moved to physically intervene to break up the fight. As Knight approached the pair, however, he discovered that the other prisoner had a homemade weapon and, therefore, changed tactics. (*Id.* at PageID.119.) Knight states that because a prisoner fight is a dangerous situation that poses a threat not only to the prisoners involved in the fight, but also to prison staff, and can stir up other prisoners, he determined that deploying his ECD was the quickest way to gain control of the situation. Knight attempted to draw his ECD, but it became caught on his belt, delaying his ability to use it. (*Id.* at PageID.119.) While Knight was trying to draw his ECD, CO Dobe arrived and deployed chemical spray toward Hicks and the other prisoner, but the spray did not work. As the fight continued, Hicks positioned himself above the other prisoner on the ground, leaving Knight without a clear shot at the other prisoner. (*Id.*) Based on his training and experience,

2

Knight knew that because the prisoners were in physical contact, both prisoners would experience the effects of the ECD if he deployed it against one of them. (*Id.* at PageID.120.) Because the fight had to be stopped in order to get Hicks medical care, Knight deployed his ECD toward the fighting pair, even though they presented a moving target. The ECD prongs struck Hicks, and the prisoners immediately stopped fighting. Knight remained with Hicks while CO Dobe remained with the armed prisoner. Other officers took control of Hicks and the other prisoner, but Knight remained with Hicks until he arrived at healthcare. (*Id.*)

      **C.**      **The Video**

In support of his motion for summary judgment, Hicks has submitted video of the incident recorded by a hallway surveillance camera. The video begins by showing Hicks walking down the hallway and away from the camera at about 6:30:39 AM. Hicks eventually goes off the camera at the end of the hallway. Knight first appears on the video at about 6:31:38, as he walks up the stairs at the end of the hallway toward the camera. Knight continues down the hallway doing his rounds. As Knight walks down the hallway, Hicks reappears as he comes around the corner. At 6:32:02, the other prisoner exits his cell as Hicks walks by and begins attacking Hicks from behind. At 6:32:04, Knight hears the commotion and turns around. Knight rushes toward Hicks and the other prisoner, who are fully engaged, and attempts to physically intervene. Upon seeing the other prisoner with a weapon, Knight backs away and attempts to remove his ECD, but is unable to remove it. By 6:32:13, Hicks begins to fight back and overpower the other prisoner. Knight again attempts to intervene, but the other prisoner prevents him from doing so as he continues to stab at Hicks with the weapon. At 6:32:14, CO Dobe runs up to the fighting prisoners. Hicks then takes the other prisoner to the ground and ends up on top as CO Dobe deploys his chemical spray. At 6:32:18, while Hicks is on top of, and repeatedly striking, the other prisoner, Knight points his

ECD and deploys it at the prisoners, hitting Hicks and immediately causing them to separate and cease fighting. The entire incident lasted approximately 20 seconds.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).

An Eighth Amendment claim has both an objective and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Id.* at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). The subjective component, as set forth above, asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. (quoting *Hudson*, 503 U.S. at 7).

Here, Hicks fails to establish the objective prong of his claim because he has not shown that Knight's use of his ECD amounted to more than a *de minimis* use of force. In that regard, Hicks has presented no evidence (other than his own unsupported statements) showing that he received any injury from the tasing itself, as opposed to the stab wounds caused by the other prisoner. (ECF No. 42 at PageID.141.) While the extent of injury is not dispositive, the lack of anything more than usual discomfort indicates that the force was *de minimis*. *See Guile v. Spence*, No. 2:19-cv-138, 2022 WL 658711, at *4 (W.D. Mich. Feb. 4, 2022), *report and recommendation*

5

*adopted*, 2022 WL 656653 (W.D. Mich. Mar 4, 2022) (concluding that the plaintiff failed to establish the objective prong of his Eighth Amendment claim where his only injuries from being tased were a hole in the back and soreness over the following days, and the plaintiff was given immediate medical attention). Although Hicks complains about the stab wounds that the other prisoner inflicted on him, Knight had nothing to do with those injuries.

As for the subjective prong, the parties' versions of the incident are not substantially at odds, and Knight has presented video that clearly depicts the entire incident. The Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), while not directly on point, is applicable here. *Scott*, which addressed video evidence, holds that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Thus, when video evidence is presented, witness testimony will not create a genuine issue of material fact if the video is unambiguous and answers the pertinent factual questions. *See Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Scott*, 550 U.S. at 380–81).

In light of the clear video evidence in this case, no reasonable jury could conclude that Knight used his ECD on Hicks maliciously and sadistically to cause harm, rather than in a good-faith effort to end the fight and restore order. In other words, the video answers the pertinent factual questions. As Knight explains in his affidavit and the video confirms, while in the course of conducting his rounds, Knight heard something, turned around, and saw two prisoners fighting. There is no indication that he knew at that point which one was the aggressor. When he initially attempted to intervene, he discovered that the other prisoner had a weapon and reasonably decided to use his ECD, but was unable to unholster it. Within seconds, Hicks overpowered the other

prisoner and took him to the ground. CO Dobe then deployed his pepper spray, which was ineffective in separating the prisoners. At that point, Knight reasonably deployed his taser to stop the fight and separate the prisoners.

Although Hicks contends that Knight's use of force was "needless" against a prisoner who was being attacked by another armed prisoner who was refusing to comply with commands (ECF 42-1 at PageID.151), it is undisputed that when Knight deployed his ECD, Hicks and the other prisoner were physically engaged, and Hicks was on top of the other prisoner delivering blows. Knight had already tried to physically intervene, and CO Dobe had deployed pepper spray that was ineffective. Use of an ECD was the next logical and reasonable step to separate the prisoners. While it is true that Hicks was not the initial aggressor and certainly had the right to defend himself, as a prison staff member, Knight was entitled to use such force that would reasonably end the fight without endangering prison staff and allow Hicks to obtain medical treatment for his stab wounds. It is unfortunate that the ECD's prongs struck Hicks, but the video shows that this was a rapidly evolving situation, and Knight did not have an unimpeded shot at the other prisoner. In addition, as Knight states in his affidavit, he knew (or at least believed) from his training that because the prisoners were in contact, both prisoners would feel the ECD's effects. The video certainly supports this assertion, as both prisoners ceased fighting immediately after Knight deployed his ECD. In any event, as set forth above, the pertinent inquiry is whether the use of force was malicious or sadistic, and the video flatly shows that was not the case. To the extent that Hicks contends that Knight should have ordered him to stop defending himself or taken other steps to gain control of the situation without deploying his ECF at Hicks, his argument fails because negligence, inadvertence, or good faith error will not suffice to meet the Eighth Amendment

standard. *Whitley*, 475 U.S. at 319. Perhaps Knight could have done things differently, but that does not give rise to an Eighth Amendment violation.

As part of his response, Hicks attaches a statement of 17 disputed factual issues he contends preclude summary judgment. (ECF No. 42 at PageID.144–46.) However, because the video answers all of the pertinent factual questions (including some of those that Hicks identifies), these issues are immaterial to the resolution of the instant motion. Hicks has also submitted video evidence allegedly showing an individual touching another individual being tased without "secondhand tas[ing]." (ECF No. 41.) This video has nothing to do with the facts of this instant case. In any event, even if the video shows what Hicks claims, it is insufficient to overcome Knight's motion. First, the video would not demonstrate that Knight was subjectively aware that his deployment of his ECF device would not affect both prisoners. In addition, and more importantly, it would not refute the clear video evidence demonstrating that Knight deployed his taser in a good-faith effort to end the fight, restore order, and allow Hicks to receive treatment for his stab wounds. In short, Hicks fails to demonstrate that Knight violated his Eighth Amendment rights.

Finally, because Hicks fails to establish a constitutional violation, I find it unnecessary to address Knight's argument that he is entitled to qualified immunity. *See Holsapple v. Cunningham*, 817 F. App'x 95, 107 (6th Cir. 2020) (concluding that because the defendant did not commit a constitutional violation, it was unnecessary to determine whether he was entitled to qualified immunity).

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant Knight's Motion for Summary Judgment (ECF No. 37) and enter judgment in favor of Defendant Knight.


Dated: March 7, 2023                                     /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).